**Thelma M. GUERIN, Doris J. Tircuit, and Geraldine Simmons**

v.

**POINTE COUPEE PARISH NURSING HOME, Pointe Coupee Parish Police Jury, Magnolia Management, Mona Chustz and Jackie Mougeot**

No. CIV.A.01–627–B–M1.

United States District Court, M.D. Louisiana.

Jan. 10, 2003.

James C. Ferguson, Baton Rouge, LA, for plaintiffs.

Robert J. David, Jr., Michael P. Maraist, Onebane, Bernard, Torian, Diaz, McNamar & Abell, Lafayette, LA, for Pointe Coupee Parish Nursing Home, Magnolia Management, Mona Chustz, Jackie Mougeot, defendants.

James Huey Gibson, Nora M. Stelly, Allen & Gooch, Lafayette, LA, Robert J. David, Jr., Michael P. Maraist, Onebane, Bernard, Torian, Diaz, McNamar & Abell, Lafayette, LA, for Pointe Coupee Parish, defendant.

### *RULING*

POLOZOLA, Chief Judge.

This matter is before the Court on defendants', Pointe Coupee Parish Nursing Home ("nursing home"), Pointe Coupee Parish Police Jury("Police Jury"), Pointe Coupee Nursing and Rehabilitation Center ("PCNRC"), Mona Chustz("Chustz") and Jackie Mougeot("Mougeot"), Motion for Summary Judgment[1] and Opposition to Motion For Leave of Court to File Out of Time Opposition to Motion for Summary Judgment.[2]

The *Court's Scheduling Order* of December 6, 2001 required all dispositive motions to be filed on or before July 31, 2002. On July 31, 2002, defendants timely filed dispositive motions as to all claims asserted by the plaintiffs, Thelma M. Guerin, Doris J. Tircuit and Geraldine Simmons. Plaintiffs did not file any opposition to defendants' motion within twenty days as required by Local Rule 7.5M. The plaintiffs also failed to comply with Rule 56 of the Federal Rules of Civil Procedure.

On August 27, 2002, seven days after the time period required for filing an opposition had run, plaintiffs filed a Motion for Extension of Time to File Opposition to

Motion for Summary Judgment. The Court granted plaintiffs' motion and ordered plaintiffs to file an opposition to the motion for summary judgment and cross motion to summary judgment on or before September 30, 2002.

After granting plaintiffs' motion for Extension of Time to file Opposition to Motion for Summary Judgment, plaintiffs still failed to timely oppose defendants' motion on or before September 30, 2002 as ordered by the Court. On October 15, 2002, plaintiffs filed a second Motion for Leave of Court to File Out of Time Opposition to Motion for Summary Judgment but did not serve defendants with a copy of this motion until October 25, 2002. On October 30, 2002, the defendants filed an Opposition to Motion for Leave of Court to File Out of Time Opposition to Motion for Summary Judgment.

 Plaintiffs have failed to timely oppose defendants' motion within twenty days under Local Rule 7.5M and failed to comply with this Court's order granting them an extension to file an opposition to defendants' Motion for Summary Judgment. Not only did the plaintiffs fail to timely respond to the motion, the plaintiffs' first motion for an extension was filed *after* the time for filing an opposition had run. Then plaintiffs failed to timely file their response within the time permitted by the Court's order which granted plaintiffs additional time to file a response. Plaintiffs failure or refusal to comply with the local rule, the Court's order and Rule 56 are sufficient reasons to strike plaintiffs' opposition. Since plaintiffs may not rely on their pleadings to oppose defendants' motion for summary judgment, defendants' motion for summary judgment should be granted. Therefore, the Court hereby grants defendants' Opposition to

---

1. Rec. Doc. No. 42.

2. Rec. Doc. No. 63.

Motion for Leave of Court to File an Out of Time Opposition to Motion for Summary Judgment.

Even if the Court considered defendants' tardy response, the Court finds that the defendants' Motion for Summary Judgment should be granted as a matter of law under the facts of this case. The plaintiffs have failed to set forth a genuine issue of material fact for trial as required by Rule 56(e) of the Federal Rules of Civil Procedure to defeat the defendants' motion for summary judgment. Therefore, for reasons which follow, the Court hereby grants defendants' motion for summary judgment.

### I. Background

Each of the plaintiffs, Guerin, Tircuit and Simmons have filed claims against the nursing home, Police Jury, PCNRC, Chustz and Mougeot. Plaintiffs' claims arise out of their employment with the nursing home while it was under the control of the Police Jury and the transfer of these operations to PCNRC. The plaintiffs have filed separate claims which include: (1) race discrimination and retaliation under Title VII of the Civil Rights act of 1964[3] and (2)disability discrimination under the American with Disabilities Act("ADA").[4]

The Police Jury owned and operated the nursing home until December 1, 2000. The Police Jury then leased the facility and turned over all operating functions to PCNRC. Magnolia has a contract with PCNRC to provide management services to PCNRC. Chustz served as an administrator immediately prior to PCNRC leasing the facility and continued to work for PCNRC until she resigned in approximately January of 2002. Mougeot served as Director of Nursing under both the Police Jury and PCNRC and is still serving as Director of Nursing. For clarity purposes, each of the plaintiff's claims will be discussed separately.

### A. The Claims of Thelma M. Guerin

Thelma M. Guerin filed this suit alleging that the defendants terminated her based on race "discrimination and retaliation" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. § 1981(" § 1981"), and 42 U.S.C § 1983(" § 1983"). She also alleges disability discrimination under the American with Disabilities Act("ADA"), 42 U.S.C. § 12101 *et seq.*.

Guerin began working for the nursing home while it was under the management of the Police Jury as a Certified Nursing Assistant "CNA" in 1985. Later she became a ward clerk until the beginning of 1989. In 1989, she began to work in the front office as a "secretary/receptionist". Guerin maintained this position for about eleven years under six to seven different nursing home administrators. Guerin claims that all defendants and several unnamed individuals engaged in a long-term "scheme" or "conspiracy" to discriminate or retaliate against her. She alleges that her name, along with other employees, was placed on a "bye-bye list" by the defendants in an effort to get rid of certain black employees. Guerin also alleges that after the defendants eliminated her "secretary/receptionist" position, the defendants offered her a position as a CNA that she could not perform because of a back injury.

---

**3.** The Title VII complaint includes 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

**4.** Only Thelma Guerin and Doris Tircuit have filed claims under the ADA.

Defendants contend that on or about November 9, 1999, Chustz, in anticipation of PCNRC taking control of the nursing home from the Police Jury, explained to Guerin that her position was being eliminated because it had no "secretary/receptionist" position in its operational structure. The defendants also contend that Guerin was terminated from her position as a CNA for taking improper medical leave.

### B. The Claims of Doris J. Tircuit

Doris J. Tircuit has filed suit alleging that the defendants terminated her based on race "discrimination and retaliation" under Title VII, § 1981 and § 1983. She also alleges disability discrimination under the ADA.

Tircuit worked as a housekeeper for several years in the nursing home when it was under the control of the Police Jury. In August 2000, prior to PCNRC taking over the operation of the nursing home on December 1, 2000, Tircuit requested time off for gallstone surgery from the housekeeping supervisor, Mary Jones. After surgery, Tircuit received a note from her doctor which stated that she could return to part-time, light duty work on October 3,2000, and return for full duty on December 1, 2000. On September 27, 2000, Tircuit claims that she discussed returning to part-time work with the defendants. She alleges that defendants told her that the company had no light duty, part-time positions in housekeeping. Tircuit also claims that the nursing home failed to provide reasonable accommodations for her disability. In addition, Tircuit alleges that she was placed on the same "bye-bye list" that Guerin was placed on and that defendants engaged in a long-term "scheme" or "conspiracy" to discriminate or retaliate against her. Tircuit also claims that she was discriminated against based on her race when she was fired after taking medical leave. Defendants contend that Tircuit was not fired because of her disability. Defendants claim her position was eliminated when they had to downsize the staff in the housekeeping department because the nursing home was in financial trouble after PCNRC took over the operations.

### C. The Claims of Geraldine Simmons

Geraldine Simmons has filed suit alleging that the defendants terminated her based on race "discrimination and retaliation" under § 1981 and § 1983.

Simmons was hired by the nursing home as an Assistant Activities Director while it was under the control of the Police Jury. She held this position for about nineteen years until Chustz terminated her on March 2, 2001. Simmons alleges that the defendants engaged in a long-term "scheme" or "conspiracy" to discriminate against her and the she was also placed on the "bye-bye list" after PCNRC took over operations from the Police Jury. Simmons claims that after PCNRC took over the operations, defendants discriminated against her based on her race, when she was demoted and offered a position as a CNA. She also alleges that she was fired because of her race. Defendants contend that Simmons was offered a position as a CNA because defendants eliminated the Assistant Activities Director position due to low patient census. Also, that defendants terminated Simmons as a CNA because of poor job performance.

### II. LAW

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."[5] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[8]

■ If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[9] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[10] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[11] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[13]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[14]

### B. Race Discrimination Standard

Plaintiffs, in this case, all claim that they were discriminated against because they are African–American. Specifically, plaintiffs claim that they were terminated from their employment because of their race. The standard the Court must apply to resolve a Title VII race discrimination claim has been set forth by the United States Supreme Court in a series of deci-

5. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

6. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

7. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2552).

8. *Little*, 37 F.3d at 1075.

9. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

10. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

11. *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also* S.W.S. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

12. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

13. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

14. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

sions.[15] Defendants argue they are entitled to summary judgment because plaintiffs have failed to make out a prima facie case under Title VII that race played a part in the defendants' decision to terminate each of the plaintiffs. "To defeat [defendants'] Motion for Summary Judgment, [plaintiffs] have to make a showing sufficient to establish the putative existence of every element that is essential to their case."[16] Plaintiffs may not rest on their pleadings to defeat a motion for summary judgment, but must produce summary judgment type evidence. "Otherwise, 'there can be no genuine issue of material fact, [because] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all of the facts immaterial.' "[17]

The Fifth Circuit has stated that "Title VII of the 1964 Civil Rights Act makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin.' "[18] "Under Title VII, it is unlawful for any employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . race.' "[19]

The analysis the Court is required to make in a Title VII claim was explained by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[20] First, the plaintiff must carry "the initial burden under the statute of establishing a prima facie case of racial discrimination."[21] Then, if the plaintiff meets that requirement, the "burden then must shift back to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[22] If the employer meets its burden, the prima facie case is dissolved, and then the "burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination."[23] In order for the plaintiff to "demonstrate a 'pretext for discrimination,' the plaintiff must show both that the employer's proffered reason was false and that . . . discrimination was the real reason."[24]

### 1. Plaintiffs' Burden of Proving a Prima Facie Case

■ In order to establish a prima facie case of race discrimination under Title VII, each plaintiff must establish:

**15.** See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**16.** *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1084–85 (5th Cir.1994).

**17.** *Id.* at 1085 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

**18.** *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 812 (5th Cir.1996) (quoting 42 U.S.C. § 2000e–2(a)(1)).

**19.** *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir.1994).

**20.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**21.** *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

**22.** *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

**23.** *Patton v. United Parcel Service, Inc.*, 910 F.Supp. 1250, 1263 (S.D.Tex.1995) (citations omitted).

**24.** *Patton*, 910 F.Supp. at 1263 (citation omitted).

(1) [that] she belongs to a protected group, i.e., African–American woman; (2) that she was qualified for her position; (3) that she was dismissed or suffered an adverse employment action; and (4) that [the employer] sought to replace her with a similarly qualified [employee not belonging to a protected group].[25]

Under Rule 56(c), summary judgment issues "against a party who has failed to make an evidentiary issue showing sufficient to establish an essential element of her case."[26] Additionally, the mere fact that a plaintiff "seeks an opportunity to prove that [her employer] was motivated by discriminatory intent" does not preclude summary judgment.

### 2. Defendant's Burden of Proving Legitimate Reason

■ Under the Title VII analysis set forth above, if the plaintiff carries her burden of proving a prima facie case of race discrimination, the burden then shifts to the defendant to "articulate a legitimate non-discriminatory reason for the termination."[27] In other words, defendant must show by a preponderance of the evidence, that, even if it took race into consideration when it made an employment decision, the defendant would have made the same decisions[28] based on the facts it knew at the time its decision was made.

### 3. Plaintiff's Burden of Proving Pretext

■ Once the defendant has established a legitimate explanation of its decision, the burden of proof shifts back to the plaintiff to establish that the reasons proffered by defendant are merely a pretext for discrimination.[29] As stated above, "[t]o demonstrate a 'pretext for discrimination,' the plaintiff must show both that the employer's proffered reason was false and that race discrimination was the real reason."[30]

### C. Disability Discrimination

The ADA was enacted to protect qualified individuals with disabilities from discrimination in the workplace. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[31]

With respect to an individual, the term "disability" means any of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."[32]

The term "essential functions of the job" is defined as "the fundamental job duties of the employment position the disabled

---

**25.** *Ward v. Bechtel Corp.*, 102 F.3d 199 (5th Cir.1997) (citations omitted); *See also, La-Pierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir.1996); *E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 972 n. 3 (5th Cir.1984) (citing *Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1055 (5th Cir.1984)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**26.** *Ward*, 102 F.3d at 199 (citations omitted).

**27.** *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir.1992).

**28.** *See Price Waterhouse*, 490 U.S. at 242, 109 S. Ct at 1786.

**29.** *Patton*, 910 F.Supp. at 1263. (citations omitted.)

**30.** *Patton*, 910 F.Supp. at 1263. (citations omitted.)

**31.** 42 U.S.C. § 12111(8); *See Giles v. General Electric Co.*, 245 F.3d 474, 483 (5th Cir.2001); *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir.2001).

**32.** 42 U.S.C. § 12102(2).

employee holds or desires." [33] It is unreasonable to require an employer to exempt an employee from performance of an essential function of the job.[34] The ADA does not require an employer to promote a disabled employee.[35]

■ "Reasonable accommodation" is defined in pertinent part as, "job restructuring, part-time or modified work schedules, reassignment to a vacant position...." [36] The plaintiff must show that a vacant position exists and that the plaintiff is qualified for that position.[37] Furthermore, an employer cannot be required to create "light duty" positions where none previously existed in order to accommodate disabled employees.[38]

A plaintiff may prove a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the plaintiff may establish a prima facie case of discrimination by showing that: (1) she suffers from a disability; (2) she is otherwise qualified for the job; (3) she was subject to some adverse employment action; and (4) she was replaced or treated less favorably than non-disabled employees.[39]

### III. Application of Law to Plaintiffs' Claims

#### A. Race Discrimination

As set forth above, in a Title VII race discrimination the Court must follow the burden shifting analysis set forth in *McDonnell Douglas.* The Court will apply this analysis in evaluating each of the plaintiff's claims.

#### 1. Thelma M. Guerin's Race Discrimination claim

■ Guerin has failed to make a prima facie case of race discrimination under the *McDonnell Douglas* factors because she has failed to produce any evidence on one of these very important factors. Guerin has satisfied the first factor of the test because she is African–American and therefore a member of a protected group. Also, there is no dispute that Guerin was qualified for the position that she held with the nursing home.[40] Guerin suffered an adverse employment action when she was dismissed from her job on November 30, 2000. However, plaintiff has failed to satisfy the final prong of the *McDonnell Douglas* test: that defendants' replaced her with a similarly qualified employee that was not African–American. Guerin bears this burden of proof and has offered no evidence to support her claim and this very important factor in the *McDonnell Douglas* test. The plaintiff, in her opposition [41], states that: (1)her position was eliminated; and (2) she "applied for the administrative assistant position which was filled by a white person by lateral trans-

---

**33.** 29 C.F.R. § 1630.2(n)(1).

**34.** *See Jones v. Kerrville State Hospital,* 142 F.3d 263 (5th Cir.1998).

**35.** *See Allen v. Rapides Parish School Board,* 204 F.3d 619 (5th Cir.2000).

**36.** 42 U.S.C. § 12111(9)(B).

**37.** *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996).

**38.** *See Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090 (5th Cir.1996).

**39.** *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394 (5th Cir.1995); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, (5th Cir.1996), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

**40.** Defendants' have disputed the actual title of the position Guerin held but have never argued that she was not qualified for the position.

**41.** Rec. Doc. No. 65.

fer." Such evidence is insufficient to defeat a motion for summary judgment. Defendants have produced clear evidence that plaintiff was not replaced by someone outside the African–American race. In fact, defendants have offered evidence that no one replaced Guerin. Defendants, after taking over the nursing home, eliminated Guerin's position because the nursing home was in poor financial condition and had a low census. After eliminating this position, defendants offered Guerin a position as a CNA. Since plaintiff has put forth no evidence of being replaced by someone outside of the African–American race and failed to rebut defendants' evidence, the Court concludes that Guerin has failed to discharge her burden of proving a prima facie case of discrimination. Even if Guerin did prove a prima facie case, the evidence reveals that defendants are still entitled to summary judgment as matter of fact and law. Plaintiff has failed to show that the action taken by the defendants was a pretext for discrimination.

## 2. Doris J. Tircuit's Race Discrimination claim

Tircuit has also failed to meet the initial burden of proving a prima facie case of race discrimination. She is African–American and therefore a member of a protected group. She was qualified for her position as a housekeeper. She suffered an adverse employment action when she was terminated. However, like Guerin, Tircuit has failed to prove or put forth any evidence that she was replaced by someone other than an African–American. Plaintiff's only claim is that Judy Jarreau, a white lady and a part-time employee in the housekeeping department, filled in for her full-time position while she was on leave. However, Tircuit has put forth no evidence that someone outside of the housekeeping

department replaced her position. It is clear that Jarreau was already working in the housekeeping department and just assumed more duties while Tircuit was on leave. Defendants have also put forth evidence that Tircuit's position was eliminated due to downsizing in the housekeeping department. Tircuit has failed to rebut any of defendants' evidence on this important issue. Therefore, the Court finds that Tircuit has failed to set forth a prima facie case of race discrimination. The Court also finds in the alternative that even if the plaintiff did preserve a prima facie claim, she has failed to show by competent summary judgment evidence that the action taken by the defendants was a pretext for discrimination.

## 3. Geraldine Simmons' Race Discrimination claim

 Simmons also has failed to set forth a prima face case of race discrimination. Simmons was terminated from her job as an Assistant Activities Director, is an African–American woman, and therefore, is in a protected group. There is no dispute that she was qualified for her position as an Assistant Activities Director. Simmons suffered an adverse employment action when her position as an Assistant Activities Director was eliminated. However, Simmons also failed to satisfy the final prong of the McDonnell Douglas test because she has not proven or set forth any summary judgment type of evidence that a person with similar qualifications outside of the African–American race has replaced her. The plaintiff, in her tardy opposition [42], states that: (1) defendants promised the plaintiff that when the census went back up she would be placed back into the Assistant Activity Director position; (2) Simmons had no choice but to accept the CNA position when her job was

---

42. Rec. Doc. No. 65.

eliminated; and (3) defendants achieved relatively insignificant savings as a result of eliminating plaintiff's position. However, this "evidence" or allegation is not the type of evidence required to establish a prima facie case of race discrimination. Plaintiff has submitted no evidence that the defendants replaced Simmons with someone outside of the African–American race. On the other hand, defendants have set forth affidavits and depositions which established that Simmons was not replaced by anyone. The evidence also reveals that defendants eliminated plaintiff's position because of the poor financial condition of the nursing home after they took over the operations. The plaintiff has failed to rebut any of the defendants evidence despite being given ample opportunity to do so. The Court finds that the plaintiff has failed to establish a prima facie case of race discrimination and even if she did, defendants offered a legitimate reason which plaintiff failed to rebut.

### 4. Defendants have Proved a Legitimate Reason and Plaintiffs have not Proved a Pretext

■ As previously noted above, even if the plaintiffs established a prima facie case, the Court finds that the defendants are still entitled to summary judgment on the race discrimination issue for two reasons. First, after reviewing the evidence the defendants have produced in support of there motion, this Court concludes that defendants have been able to "articulate a legitimate nondiscriminatory reason for the termination." [43] Defendants' affidavits and exhibits indicate the nursing home was in poor financial condition after the transfer of operations to PCNRC. The defendants have also put forth evidence that because of the poor financial condition and low patient census of the nursing home,

defendants were forced to eliminate several positions within the company. However, defendants, by eliminating plaintiffs' old positions and offering them alternative positions at the same rate of pay, have made "legitimate, nondiscriminatory" business decisions in which to conduct its operations. There was no evidence of discrimination submitted by the plaintiffs.

Second, the Court finds that plaintiffs have failed to establish that: (1) discrimination was the reason for their termination, and (2) defendants' reasons for terminating plaintiffs were a "pretext for discrimination." It is clear that the plaintiffs' only evidence of race discrimination is based on their subjective belief that they were treated unfairly. The plaintiffs have failed to produce summary judgment type evidence that they were terminated because of their race. It is well settled that a plaintiff may not rely on their pleadings to defeat a motion for summary judgment. The Court has given the plaintiffs ample opportunity and extensions to submit evidence to defeat defendants' motion for summary judgment. Despite the extensions, plaintiffs have failed or refuse to produce any evidence to support their claims of discrimination. Therefore, the Court concludes that the defendants are entitled to summary judgment on the claim for race discrimination as a matter of fact and law.

### B. Disability Discrimination

Guerin and Tircuit have both claimed disability discrimination under the ADA in addition to their claims for race discrimination. Both of these plaintiffs claimed they had a "disability" and that the defendants have to "reasonably accommodate" them which was the reason for their termination.

---

**43.** *Valdez v. San Antonio Chamber of Com-* *merce,* 974 F.2d 592, 596 (5th Cir.1992).

### 1. Thelma M. Guerin's Disability claim

■ Guerin claims that her "disability" is an unresolved medical condition with her back.[44] However, in order for Guerin to successfully prove a prima facie case of disability discrimination she must first establish that she is "disabled" within the meaning of the ADA. The only proof that Guerin has offered to support her claim is the testimony she gave at her deposition and the self-serving claims she made in her opposition.[45] Guerin, in her deposition, stated that she cannot do heavy lifting and that she injured her back while picking up on some laundry.[46] Plaintiff offers no proof that her back injury has substantially limited one of her major life activities as required under the jurisprudence. "A physical impairment, standing alone is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more of the major life activities."[47] Guerin has failed to produce such evidence.

### 2. Doris J. Tircuit's Disability claim

■ Tircuit claimed that her "disability" resulted from surgery to remove her gallstones and to repair a hernia.[48] Tircuit, like Guerin, must put forth evidence and prove that she has a prima facie case of disability discrimination. In other words, she must show that her surgery was a physical impairment that substantially limited one or more of her major life activities. Tircuit, in her opposition,[49] claims that she produced medical notes to defendants which indicated that she had a disability. However, the medical notes plaintiff has relied on as evidence of her "disability" only indicates that she had surgery and could not return to work for approximately three months. Plaintiff fails to produce evidence that the surgery limited one or more of her major life activities. Even if plaintiff could not work for three months, this short term incapacity does not render her "disabled" under the ADA. "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact are usually not disabilities."[50] Although, Tircuit has established that she did in fact have surgery, she has failed to put forth the type of evidence that qualifies her surgery as a "disability" under the ADA.

The Court's decision and conclusion are supported by the Fifth Circuit's opinion in *Sherrod v. American Airlines, Inc.*[51] In *Sherrod,* the plaintiff claimed that a back injury substantially limited her performance of the major life activities of lifting and working. Sherrod's back injury limited her ability to perform heavy lifting. The Fifth Circuit concluded that this limitation did not amount to a substantial limitation on a major life activity.[52]

Both Guerin and Tircuit have failed to produce sufficient evidence to create a triable issue of fact regarding their status as

44. Rec. Doc. No. 65.

45. Rec. Doc. No. 65.

46. Transcript of the Deposition of Thelma M. Guerin at p. 87.

47. *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).

48. Transcript of the Deposition of Doris J. Tircuit at p. 149.

49. Rec. Doc. No. 65.

50. 29 C.F.R. § 1630.2(j). *See also Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 946 (7th Cir.2000).

51. 132 F.3d 1112 (5th Cir.1998).

52. *Sherrod,* 132 F.3d. at 1120.

a "qualified individual with a disability." [53] Under the facts of this case, the Court finds that plaintiffs are not covered by the protections of the ADA as matter of law. Thus, it is unnecessary to address whether the defendants failed to "reasonable accommodate" Guerin or Tircuit. Therefore, defendants' motion for summary judgment should be granted on the ADA claims asserted by Guerin and Tircuit.

## C. Section 1981 and 1983 Claims

■■■ The plaintiffs, in a kitchen sink approach when preparing this complaint, have also excluded claims under 42 U.S.C. § § 1981 and 1983. The plaintiffs have argued that because they have alleged racial discrimination, race is a component of their claim under § 1981 and § 1983. The standard for determining whether § 1981 or § 1983 has been violated is similar to that used in determining whether there has been a violation of Title VII of the Civil Rights Act of 1964. The same four factors required to establish a prima facie case for race discrimination under Title VII (as set forth above) must be satisfied to establish a prima facie case for race discrimination under § 1981 or § 1983.[54] As the Court has previously held, the plaintiffs have failed to make a prima facie case for race discrimination because none of the plaintiffs have offered any evidence that there job was replaced by a similarly qualified individual outside of the African–American race. Therefore, the Court must dismiss any § 1981 and § 1983 [55] claims against all named defendants. The plaintiffs, Guerin and Tircuit, have conceded that § 1983 does not apply to their ADA claims.

## D. Title VII Claim Against Individual Defendants

■■■ The individual defendants contend that Title VII claims against them in a personal capacity should be dismissed. These defendants argue that supervisory personnel and individual agents of an employer cannot be held personally liable for damages under Title VII. It is clear that 42 U.S.C. § 2000e–2, which prohibits the discharge of an employee because of his race, only applies to employers. An "employer" is defined in 42 U.S.C. § 2000e as: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year, and any agent of such person." [56]

The Fifth Circuit has held that "individuals who do not otherwise qualify as an employer cannot be held liable for a breach of [T]itle VII." [57] The plaintiff contends that the individual defendants Chustz and Mougeot are agents of the Police Jury and thus liable under Title VII. The plaintiffs have not produced any evidence in support of this contention. Therefore, the plaintiff's contention is nothing more than a conclusory allegation which is insufficient to defeat a summary judgment. Because Title VII does not provide for the personal liability of public

**53.** See *Coker v. Tampa Port Authority,* 962 F.Supp. 1462 (M.D.Fla.1997).

**54.** *Harrell v. Turner Industries, Ltd.,* 901 F.Supp. 1149, 1152–53; See also *Patterson v. McLean Credit Union,* 491 U.S. 164, 186–88, 109 S.Ct. 2363, 2377–79, 105 L.Ed.2d 132 (1989).

**55.** The Court has serious doubts based on the evidence presented that plaintiffs have satisfied the other requirements to successfully establish a claim under § 1981 or § 1983.

**56.** 42 U.S.C.A. § 2000e(b) (West 1994).

**57.** *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994).

officials,[58] the Title VII claim against the individual defendants should be dismissed.

### Conclusion

For the reasons set forth above, the Court finds that the plaintiffs have not made a prima facie case or other showing of discrimination on the part of the defendants. Even if the Court assumes the plaintiffs have made a prima facie showing, the defendants have shown by a preponderance of the evidence that the action taken against the plaintiffs was based on non-discriminatory grounds. Plaintiffs have failed to show that the reasons proven by the defendants were a mere pretext for racial discrimination. The Court further finds that Guerin and Tircuit have failed to put forth evidence necessary to prove that they were "disabled" as defined by the ADA. As noted earlier in this opinion, the plaintiffs failed to file a timely opposition. Even after the Court gave the plaintiffs an opportunity to do so, plaintiffs failed to not only file a timely opposition, but also failed to submit any summary judgment type of evidence in opposition to defendants' motion for summary judgment. Conclusionary and self-serving statements and allegations set forth in the complaint are not sufficient to defeat a motion for summary judgment. In the interest of justice, the Court considered the tardy and inadequate opposition. However, it is clear that defendants are entitled to summary judgment as a matter of law under the facts of this case.[59]

Therefore, for the reasons set forth above:

IT IS ORDERED that defendants' motion for summary judgment be granted. Judgment shall be entered dismissing plaintiffs' claims with prejudice at plaintiffs' costs.

---

58. *Harvey,* 913 F.2d at 227–28.

59. In reaching its decision in this case, the Court took into consideration all the claims made by the parties whether discussed herein or not.