IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 98-10290
Summary Calendar

RICHARD BURGER, ET AL.,

                                                        Plaintiffs,

DORU STANCU,

                                                Plaintiff-Appellant,

                              versus

CENTRAL APARTMENT MANAGEMENT, INC.,
doing business as Gables Residential
Services,

                                                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

March 16, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:

     Doru Stancu appeals the decision of the district court to grant a Fed. R. Civ. P. 50 motion for judgment as a matter of law. In effect, this decision overturned a jury verdict awarding Stancu damages in his anti-retaliation claim, pursued against Central Apartment Management, Inc. d/b/a Gables Residential Services ("Gables"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). We hold that the conduct Stancu complains of

did not constitute an "ultimate employment decision." We therefore affirm.

I

Stancu, along with several other plaintiffs, brought suit against Gables for alleged violations of various state and federal laws. Stancu is the only plaintiff to take his case to trial, and he is the only party before us on appeal. Only the claims based on Title VII were actually tried to the jury. In the first claim, Stancu alleged that Gables refused to grant him a lateral transfer to another of the corporation's locations because of his Romanian heritage. In his second claim, Stancu alleged that Gables denied him the transfer because he had engaged in protected Title VII activities. Specifically, Stancu argued that he had opposed some of Gables' practices that he claimed were unlawful under Title VII.

Only the second claim is at issue in this appeal. The jury returned a verdict for Gables on the first claim. On the second claim, however, the jury returned a verdict for Stancu and awarded him $72,500 in compensatory and punitive damages. The district court then granted Gables' motion for judgment as a matter of law. See Fed. R. Civ. P. 50. The district court based it decision on its view that a reasonable jury could not have found by a preponderance of the evidence that but for Stancu's protected activities, Gables would have granted his request for a transfer.

2

We review de novo a district court's decision to grant a motion for judgment as a matter of law.  Nichols v. Grocer, 138 F.3d 563, 565 (5th Cir. 1998) (citation omitted).  To determine whether the district court should have granted the motion, we look to the now-familiar standard articulated in Boeing Co. v. Shipman, 411, F.2d 365 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc):

> [T]he Court should consider all of the evidence — not just that evidence which supports the non-mover's case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion.  If the facts and inferences point so strongly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [judgment as a matter of law] is proper.

Boeing, 411 F.2d at 374.  We proceed to discuss the facts with this standard in mind.

## II

Gables is a national corporation that owns and manages apartment complexes.  Stancu has been employed by Gables since January 1994.  He serves as a maintenance supervisor and, by all accounts, is highly skilled in that position.  During the relevant time period, Stancu was assigned to work at the Indian Creek apartment complex in Carrollton, Texas.  However, when he heard about a new job opening (within Gables) at the Valley Ranch

3

apartments, he asked his supervisors to reassign him to that location.

Testimony at trial revealed that Stancu wished to transfer to Valley Ranch for two primary reasons. First, the Valley Ranch apartments are located in Irving, Texas, the same city in which Stancu lived. The distance between home and work is especially important to Stancu because he is often "on call," which means that Stancu's job required him to travel to work when called upon to deal with emergency situations. Stancu also desired the job transfer because it was apparent that Gables would soon lose its management contract at Indian Creek. Stancu feared that if this happened, he might lose his job.[1] Other than these two factors, the transfer would have had no material effect on Stancu's job: the job title of the two jobs was the same, the day-to-day duties were the same, the wages at Indian Creek were as high or higher than Stancu would have earned at Valley Ranch,[2] and the other benefits did not differ.

---

[1]Eventually, Gables did lose the Indian Creek contract. At or about the time that this happened, Gables transferred Stancu to the Valley Ranch apartments. Because Gables made the transfer after Stancu filed his lawsuit, the motivations for the transfer are not clear. Nevertheless, they are irrelevant for our disposition of this appeal.

[2]Evidence adduced at trial revealed that Stancu was paid $13.93 per hour at Indian Creek while the person filling the maintenance supervisor position at Valley Ranch earned $13.00 per hour.

4

When Stancu first sought the transfer in March 1994, Gables denied his request. In pursuing the lateral transfer, Stancu first had an interview with Janet Martin, who was to be the property manager at Valley Ranch. According to both Stancu and Martin, the interview went poorly and ended with some disagreement. Undeterred, Stancu procured a meeting with the vice president of operations, Terry Turk. Turk denied the request for a transfer.

Stancu argued to the jury that the reason Gables denied his request for the transfer was because he had opposed their racially discriminatory practices. After reviewing the evidence, however, the district court concluded that Stancu failed to show a sufficient nexus between any protected activities he might have engaged in and the decision to deny his request for a transfer. Because we have chosen to dispose of this case on other grounds, we need not review the evidence concerning Stancu's activities. See Mulberry Square Productions, Inc. v. State Farm and Casualty Co., 101 F.3d 414, 421 (5th Cir. 1996) (recognizing that we may affirm the district court's judgment for different reasons than the district court relied upon).

### III

#### A

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by

this subchapter . . ." 42 U.S.C. § 2000e-3(a). From this statutory provision, our precedents have gleaned three elements that a plaintiff must prove in his retaliation claim: (1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir.) (citations omitted), cert. denied, 118 S.Ct. 336 (1997).

Our court has analyzed the "adverse employment action" element in a stricter sense than some other circuits. We have stated that Title VII was only designed to address "ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Mattern, 104 F.3d at 707 (quoting Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam))(emphasis added).[3] "'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.'" Mattern, 104 F.3d at 707 (citations omitted).

---

[3]The Eleventh Circuit has recently discussed the circuit split surrounding the issue of whether Title VII's protection against retaliatory discrimination extends to only "ultimate employment decisions." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998). We are not alone, but we are in the minority. Id.

This understanding grows out of our court's reading of the term "discriminate" as used in § 2000e-3(a). In interpreting the prohibition against "discrimination" as a form of retaliation, we have looked to the previous section (§ 2000e-2(a)) for guidance. Specifically, we decided in Mattern that § 2000e-2(a)(1) describes conduct that parallels the conduct prohibited by the term "discriminate" as used in § 2000e-3. Section 2000e-2(a)(1) makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment . . . ." 42 U.S.C. § 2000e-2(a)(1). In Mattern, we contrasted this prohibitory language with the much less refined prohibitions described in § 2000e-2(a)(2), and we concluded that the anti-retaliation provision excludes "the vague harms contemplated in § 2000e-2(a)(2)." Mattern, 104 F.3d at 709. Thus, a retaliation claim cannot be based solely on a defendant's act of "limit[ing]" an employee "in any way which would deprive [that employee] of employment opportunities or otherwise adversely affect his status as an employee." 42 U.S.C. § 2000e-2(a)(2). We have read § 2000e-3(a) "to exclude such vague harms, and to include only ultimate employment decisions." Mattern, 104 F.3d at 709.

B

Stancu argues that the denial of his transfer request qualifies as a sufficiently adverse employment action. Although

7

Stancu does not directly address our decision in Mattern, he points to the fact that the procedures for procuring the transfer had some of the trappings of the process typically used to hire new employees. He had what the parties have referred to as an "interview" with the property manager. Given this process, Stancu argues that the denial of his transfer was enough to satisfy the "adverse employment action" element of his anti-retaliation claim.

IV

We disagree with Stancu's argument that the denial of his request for a purely lateral transfer constitutes an "ultimate employment action." As an important preliminary point, we think that the overwhelming evidence before the jury established that the transfer to Valley Ranch would have been a purely lateral transfer for Stancu. The undisputed evidence established that the position at Valley Ranch had the same job title, benefits, duties, and responsibilities as the position that Stancu held at Indian Creek. Furthermore, the uncontroverted evidence also showed that Gables paid a lower wage to the person who did (initially) secure the maintenance supervisor position at Valley Ranch than Gables paid to Stancu. Stancu wanted the transfer because of his underlying desire for a shorter commute to work; this, of course, cannot have any effect on whether we view the transfer as a purely lateral one. See Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1453 (11th Cir. 1998) (ADA case in which the court held that the determination of

8

whether an employee has suffered an adverse employment action is to be made using an objective standard).

Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision. Such a refusal is not akin to acts "such as hiring, granting leave, discharging, promoting, and compensating." Dollis, 77 F.3d at 732 (citing Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc)). Although Stancu may have gone through an interview, the result of that meeting would not have altered Stancu's status as an employee already hired by Gables. Our view comports with "the clear trend of authority" in other circuits holding that "a purely lateral transfer is not an adverse employment action." Dekalb County Sch. Dist., 145 F.3d at 1450 (quoting, in part, Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)) (quotation marks omitted); see also Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) (stating that refusals to transfer are arguably less intrusive than involuntary relocations). Other circuits have been quick to parrot the following passage written by Chief Judge Posner:

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. The Equal Employment Opportunity Commission,

9

> already staggering under an avalanche of filings too heavy for it to cope with, would be crushed, and serious complaints would be lost among the trivial.

Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996); see also Ledergerber, 122 F.3d at 1144 (quoting the same); Garber v. New York City Police Dept., No. 97-9191, 1998 WL 514222, at *4 (2d Cir. June 12, 1998) (unpublished opinion) (quoting the same); Dekalb County Sch. Dist., 145 F.3d at 1449 (quoting the same); but see Randlett, 118 F.3d at 862 (concluding that a refusal to transfer can form the basis for a Title VII anti-retaliation claim when the plaintiff has submitted evidence showing that such transfers for hardship reasons are so customary that they are a "privileges" of employment).

Stancu might have argued, but did not, that the transfer he sought was not purely lateral because he thought that the position at Valley Forge would be more secure. After all, Stancu thought it apparent that Gables would soon lose their management contract at Indian Creek. Yet even this argument would fail. As we stated in Mattern, "Title VII's anti-retaliation provision refers to ultimate employment decisions, and not to an 'interlocutory or mediate' decision which can lead to an ultimate decision." Mattern, 104 F.3d at 708. Transferring an employee to a less secure (but otherwise similar) position is obviously an "interlocutory or mediate decision which can lead to an ultimate decision." Had Gables denied Stancu the transfer and then let him go when the

10

Indian Creek contract expired, Stancu may have had a cognizable anti-retaliation claim. But Stancu did not lose his job, and was in fact transferred to Valley Forge when the Indian Creek contract expired. In sum, no reasonable jury could find by a preponderance of the evidence that Gables made an adverse, ultimate employment decision with regard to Stancu.

Having decided that Stancu has not met the "adverse employment action" element, we need not address the causation element. Furthermore, Stancu is not entitled to attorney's fees because he is not a prevailing party under Title VII. 42 U.S.C. § 2000e-5(k). The judgment of the district court is therefore

A F F I R M E D.

11