IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-10192
Summary Calendar
_____

JULIE R. BARRY,

Plaintiff-Appellant,

versus

SIMMONS AIRLINES INC., Individually, doing business as American
Eagle Inc., doing business as American Eagle Airlines; AMR EAGLE
INC., Individually, doing business as American Eagle Inc., doing
business as American Eagle Airlines; AMERICAN EAGLE AIRLINES
INC., Individually, doing business as American Eagle Inc., doing
business as American Eagle Airlines,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:98-CV-1956-L
--------------------
November 14, 2000

Before SMITH, BENAVIDES, and DENNIS Circuit Judges.


PER CURIAM:[*]

Julie Barry filed suit against her employer American Eagle

Airlines ("Eagle") raising claims ranging from sex discrimination

and retaliation under Title VII to defamation and tortious

interference with contract under Texas common law. The district

court granted summary judgment for Eagle on all claims, finding

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

that Barry had presented insufficient evidence to raise a factual dispute on a fact critical to each of her claims. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Julie Barry is a captain piloting passenger aircraft for Eagle.[1] In late 1997, Barry filed an application for a pilot position with American Airlines ("American"). American interviewed Barry for the position on February 16, 1998. On February 23, American offered Barry employment as a pilot on the condition that she successfully complete American's standard background and medical checks.

Barry completed the required medical exam on March 4, 1998. On Friday, March 6, 1998, Tim Chapman, a pilot from American's recruiting office, telephoned Barry on instructions from his recruiting office supervisor Philip Strain. Chapman led Barry to believe that American would formally hire her and announce the

---

[1] According to Barry, her tenure at Eagle has been quite turbulent and created ill will by Eagle officials against her. During her employment, Barry has been pregnant twice. With each pregnancy, she filed grievances protesting Eagle's maternity policy that required her as a pregnant pilot to stop flying during her third trimester. In both cases, Eagle denied Barry's grievance and enforced its policy. After each pregnancy, Barry took maternity leave. Additionally, Barry suffered an on the job injury and took workers' compensation leave between her two pregnancies. Barry contends that during her employment, her co-workers made several harassing comments about her attendance and performance. She does not complain that these events themselves constitute or form a basis for direct claims against Eagle. Instead, Barry raises these events to demonstrate the animosity between Eagle management and herself, animosity which she believes motivated Eagle to interfere with her application for employment at American. It is this alleged interference that is central to her claims.

2

appointment publicly at the Women in Aviation Conference, scheduled to take place in Denver the following week. Chapman asked Barry to attend the conference and begin pilot training classes on March 30, 1998. Because Eagle had Barry scheduled to fly during the conference, Chapman stated that he would contact Eagle to request that she be allowed to attend the conference.

Kenneth Marczak, Eagle's chief pilot, confirmed that Eagle received a call from American requesting that Barry be relieved of her flight obligations so that she could attend the conference. Despite knowing that American planned to publicly announce its offer to Barry at the conference, Marczak was unable to release her from duty because of a pilot shortage. Marczak notified Eagle executive Jim McCalla that American had inquired about releasing Barry from her flight so that she could attend the conference.

Between Friday, March 6 and Monday, March 8, Strain retrieved a computer record of Barry's attendance at Eagle. Strain states that he pulled Barry's attendance records because he had not yet received her personnel file from Eagle. After reviewing the records, he testified that he decided to rescind American's offer of employment to Barry. On March 16, 1998, Barry received a letter from American rescinding American's offer of employment to her.

Barry claims that American rescinded its offer of employment only because an Eagle official telephoned American and disparaged

3

her.  As support for this allegation, she contends that others, including Ken Marczak, told her that someone from Eagle telephoned American to say that Barry was not fit to be an American pilot.  Barry alleges that Marczak even identified Richard Ricardi, Eagle's president at that time, as the caller.  Both Chapman and Marczak deny ever making these statements to Barry.  The record contains no testimony from Paige Stimson that supports Barry's recollection of Stimson's statements.

Ricardi admits to becoming aware of Barry's application for employment at American from Jim McCalla and Jack Shattuck, Eagle's chief pilot.  Ricardi concedes that he was also aware of McCalla's and Shattuck's concerns that Barry was not fit to be an American pilot based on her attendance record at Eagle.  Finally, Ricardi admits that he telephoned Strain in March of 1998 to recommend other candidates for pilot positions at American.  During that conversation, both Strain and Ricardi testified that Strain told Ricardi that American's conditional offer of employment to Barry had been rescinded.  According to both, Ricardi responded that he was not surprised based on Barry's attendance record at Eagle.

Barry sued Eagle and American for damages resulting from her lost job with American.  Barry's theories of recovery against Eagle included sex discrimination and retaliation under both state and federal law, defamation, tortious interference with contract, and promissory estoppel. Following discovery, Barry

4

abandoned all claims against American and certain claims against Eagle. On January 31, 2000, the district court granted summary judgment against Barry on her remaining statutory and common law claims. Barry now appeals that ruling.

**DISCUSSION**

Barry appeals the district court's summary judgment dismissal of the following claims against Eagle: (1) gender discrimination in violation of Title VII and the Texas Labor Code; (2) retaliation in violation of Title VII; (3) defamation; (4) tortious interference with contract; and (5) promissory estoppel.[2] This Court reviews a grant of summary judgment de novo. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a grant of summary judgment, we must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Id.* at

---

[2] Barry's present appeal focuses on Eagle's alleged interference "with her offer of employment as a pilot at American." As noted in footnote 1, she does not seek damages related to any allegations of sexual harassment.

5

255. However, the nonmovant may not rest upon the pleadings, she must present specific, admissible evidence establishing that a genuine issue exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires that the nonmovant "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Barry concedes that an alleged phone call from an Eagle representative to American is crucial to each of her remaining causes of action. We agree. In fact, we believe that it is essential to each of Barry's claims that she present evidence creating a legitimate factual dispute not only that such a phone call took place, but that (1) the call occurred prior to American's decision to rescind Barry's conditional offer of employment, and (2) that in the call, the Eagle representative in some way disparaged Barry's character and discouraged American from hiring her. Viewing the evidence in the light most favorable to Barry, we are convinced that she has not established more than "some metaphysical doubt" on these crucial points.

The only evidence that an Eagle official called or spoke with American to disparage Barry prior to American's decision to rescind Barry's employment offer is contained in Barry's deposition. Even Barry admits having no personal knowledge that an official at Eagle ever communicated with an official at American about her application for employment. Instead, Barry relies on "rumors" allegedly passed on to her by Ken Marczak

6

suggesting that an Eagle official disparaged her in a phone call to American.[4]  The district court properly excluded Barry's testimony regarding Marczak's statement as double hearsay.  While Marczak's statement to Barry might have qualified as an admission by a party opponent, the party reporting to Marczak that a phone conversation took place between Ricardi and Strain remains unknown.[5]  Barry has not identified an applicable hearsay

---

[4] Barry also testified that she heard two other conflicting rumors.  First, she stated that Paige Stimson, relying on Claudette Carroll, told her that Jim McCalla called American on behalf of Eagle.  The record contains no direct testimony by Stimson or Carroll supporting Barry's testimony.  Barry also reported that four days after Chapman's original call to invite her to the Women in Aviation Conference, Chapman called again and told her that someone from Eagle had telephoned American and said that Barry was "unfit or incompetent to be an American pilot." According to Barry, Chapman's statement did not specify who had made the phone call or precisely when it was made.  Chapman denies ever making such a statement to Barry.  Barry's testimony regarding both of these out of court statements is inadmissible hearsay and thus properly disregarded by Barry on appeal. *See* FED R. EVID. 801, 802.

[5]    Barry argues that the district court erred by analyzing Marczak's statement as double hearsay because Marczak's statement was based on his personal knowledge.  Even assuming that Marczak told Barry that Ricardi made a phone call to Strain regarding her employment application, a statement that Marczak denies making, we find no evidence in the record that would support Barry's inference that Marczak had personal knowledge of the timing and content of the alleged conversation.  To have had personal knowledge of these facts, Marczak would have had to have participated in or listened to the alleged conversation between Ricardi and Strain.  Barry's deposition testimony in no way suggests that Marczak himself participated in a conversation between Eagle and American regarding her employment application. Indeed, Barry only raised Marczak's statement in the context of a question regarding "rumors" that she had heard regarding a disparaging phone call from an Eagle official to American. Absent any evidence that Marczak had personal knowledge of the

(continued...)

7

exception for the statements of this unknown declarant regarding the timing and content of the alleged conversation.

Without admissible evidence on the content of a phone conversation between Eagle and American that took place prior to American's rescission of its offer of employment, Barry concedes that she is unable to maintain any of her claims. Her gender and sex discrimination claims fail because she cannot prove an adverse employment action - that Eagle phoned her prospective employer to disparage her.[6] *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Barry's retaliation claims similarly fail due to the absence of an ultimate employment action. *See Burger v. Central Apartment Management, Inc.,* 168 F.3d 875, 877 (5th Cir. 1999). Her defamation claim fails because she has not offered sufficient evidence that Eagle ever published a defamatory statement to American. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646-47 (Tex. 1996). The absence of proof on the phone call also undermines Barry's claims for tortious interference with a contract or prospective contract, since the phone call is Barry's only allegation of interference by Eagle. *See Winston v. American*

---

[5](...continued)
conversation, the district court properly excluded Barry's testimony regarding Marczak's statement as hearsay within hearsay.

[6] We in no way suggest that this phone call, if proven, would constitute an adverse employment action.

8

*Med. Intern Inc.*, 930 S.W.2d 945, 953 (Tex. App. -- Houston [1ˢᵗ Dist.] 1996, writ denied).  Finally, Barry's promissory estoppel argument fails because that cause of action requires that she prove *detrimental* reliance on a promise by Eagle not to retaliate against her; if Eagle made no phone call, it did not retaliate and there could be no detrimental reliance on a promise not to retaliate.  *See English v. Fisher*, 660 S.W.2d 521, 524 (Tex. 1983); *Vida v. El Paso Employees' Federal Credit Union*, 885 S.W.2d 177, 181 (Tex App. – El Paso 1994, reh'g denied).

CONCLUSION

Even taking as true Barry's reports of the conversations between herself and Marczak, Marczak's statement is inadmissible hearsay for it relies on out of court statements by others offered for their truth.  Absent admissible evidence that a representative of Eagle contacted a representative of American prior to American's rescission of its offer of employment, each of Barry's claims fails.  As a consequence, we AFFIRM the judgment of the district court.

9