Newton MCNEALY

v.

**EMERSON ELECTRIC COMPANY**
d/b/a Fisher Service Company

No. CIV.A. 02–425–B–M1.

United States District Court,
M.D. Louisiana.

Feb. 25, 2004.

Dan Michael Scheuermann, Keith Harding Grant, Troy D. Jackson, Baton Rouge, LA, for Plaintiff.

Newton McNealy, Gonzales, LA, Pro se.

Timothy H. Scott, Winston G. DeCuir, Jr., Fisher & Phillips, New Orleans, LA, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, Chief Judge.

This matter is before the Court on a motion for summary judgment filed by defendant, Emerson Electric Company d/b/a Fisher Service Company ("Fisher").[1] For written reasons which follow, the defendant's motion for summary judgment on the federal claims is granted. Because the Court declines to exercise jurisdiction on the state law claims, the state law claims are dismissed without prejudice.

Newton McNealy claims that: (1) Fisher discriminated against him based on his race in violation of 42 U.S.C. § 2000e, et. seq., 42 U.S.C. § 1981, and La. R.S. § 23:301; (2) his civil rights were violated under 42 U.S.C. § 2000e, et. seq., 42 U.S.C. § 1981, and La. R.S. § 23:301; (3) Fisher created a hostile work environment in violation of 42 U.S.C. § 2000e, et. seq., La. Civ.Code article 2315, and La. R.S. § 23:301; (4) Fisher discriminated against him based on his age in violation of 29 U.S.C. § 621; (5) Fisher retaliated against him for complaining about Fisher's alleged environmental violations in violation of La. R.S. § 30:2027; and, (6) he is entitled to damages for emotional distress, intentional infliction of emotional distress, and loss of past and future wages and other employment benefits in violation of La. Civ.Code article 2315 and La. R.S. § 23:301.

The facts in this case have been stipulated to in the Pre–Trial Order[2] which was filed in this case. The Court adopts by reference the facts stipulated to by the parties. These facts may be summarized as follows. Fisher designs, manufactures, distributes and services various types of industrial valves for use in the petrochemical industry. Part of Fisher's business operation is devoted to servicing, repairing, and assembling its valves and related products at service facilities located throughout the country. One of those facilities is located in Gonzales. Fisher's Gonzales facility employs approximately thirteen machinists who work in one of two areas of the shop: the repair division and the Encore division. The repair division handles the service and repair work for Fisher valves, and the Encore division, which was recreated in June 1998, reconditions valves to Fisher specifications for resale. Approximately one-third of the machinists work in the Encore division, but this number fluctuates from time to time based on the Company's manpower needs. Machinists working in the repair division perform similar duties and utilize the same equipment as those in Encore.

---

1. Rec. Doc. No. 21.

2. Rec. Doc. No. 27.

Fisher maintains a written policy prohibiting discrimination and harassment in the workplace. The policy, which is disseminated to all employees, provides a mechanism by which an employee who feels harassed or discriminated against can complain to management or human resources.

The Company publishes a wage progression scale which governs the rates of pay applicable to all service employees, such as machinists, welders, mechanics, assemblers, and utility workers. Employees receive set raises depending on the position that they hold and their performance over time in the position. The highest rate of pay in the facility is assigned to experienced machinists and welders. Consistent with Company policy, Fisher posts openings for non-temporary positions in the shop, and employees who are eligible to bid for the positions are required to submit a request to the general manager, Eric Kitto.

Plaintiff Newton McNealy, an African-American male born on March 6, 1955, began his employment with Fisher in 1987 as a machinist on the night shift. Since 1990, plaintiff has remained in the highest pay classification of any employee in the shop consistent with the applicable pay scale.

In 1994, plaintiff bid on and was awarded a day shift position as a utility worker. At this time, plaintiff was earning $19.10 per hour. The position for which plaintiff bid only paid $10.50 per hour, forty-five percent less than what plaintiff was making. Management explained to plaintiff that the position paid substantially less than he was earning; however, plaintiff indicated he was still interested in the job and was awarded the position accordingly. On the first day he was to report to the new job, plaintiff informed his lead man that he was no longer interested in the position because of the pay difference.

Fisher agreed to allow him to return to his machinist position.

In March 1998, plaintiff was awarded a machinist position on the day shift. In June 1998, the Company expanded its Gonzales facility to include the newly-defined focus referred to as Encore. Kitto asked all of his machinist if they were interested in submitting bids to transfer to the Encore department. There were two open slots and the following three machinists applied: plaintiff; Henderson Clark, an African-American male born in 1951 and hired by the Company in February 1979; and John Goings, a White male born in 1952 and hired by the Company in May 1979. Clark and Goings were hired, and plaintiff never made a complaint to management about this decision. The two positions paid the same rate that plaintiff was receiving.

In December 2000, the Company posted an opening for an Encore machinist. This opening was slotted at a rate approximately twenty-seven percent less than what plaintiff was making, but plaintiff applied for the position anyway. Rather than accept his bid and put him into a lower-paying position, Kitto met with plaintiff to make sure that plaintiff was aware that he was seeking an inferior position and to avoid the same situation that had occurred in 1994. Plaintiff told Kitto that he would get back with him about the position, and two days later, plaintiff told Kitto he was no longer interested in the position when asked.

Other openings in the Encore division were posted by Fisher in December 2000. Fisher had posted openings for a mechanic evaluator and a welder. The welder position paid considerably less than plaintiff was earning, and the mechanic evaluator position paid somewhat less than what he was earning. The welding position went

to Nick Veazy,[3] who, unlike plaintiff at the time, was a certified welder. The mechanic evaluator went to Matt Bourgeois.

In April 2001, plaintiff applied for an Encore machinist position. This position involved no pay raise and required that the machinist perform similar duties in the Encore part of the shop. Kitto had to choose between plaintiff and Lloyd Young, a White male born in 1954 and hired by the Company in 1976. Around this same time, plaintiff bid for two machinist openings in the Encore division which both paid twenty-seven percent less than what he was receiving as a machinist in the repair division. Kitto arranged for plaintiff to be cross-trained and certified as a welder to increase his versatility, and in August 2002, plaintiff agreed to a temporary assignment in the Encore division as a machinist earning his same rate of pay because of manpower needs. Fisher reprimanded plaintiff twice in November 2002 for performance and attendance issues. Later that month, plaintiff requested that he be moved back to his prior position in the repair division, but Fisher declined the request because the manpower requirements were still such that the Company needed him to work in the Encore position.

On April 2, 2003, plaintiff was involved in an altercation with a co-worker, Henderson Clark. The Company investigated the incident and concluded that plaintiff had acted inappropriately. Kitto made the decision to suspend him without pay for two weeks, place him on final warning status and require him to undergo an evaluation to ensure that he was not a threat to his co-workers. Further, the Company made the decision to end his temporary assignment in Encore and move

him back to the repair division. Plaintiff remains working as a machinist in the repair division receiving the highest hourly rate in the shop in accordance with the wage rate scale.

On September 7, 2001, plaintiff filed a charge of discrimination with the EEOC alleging age and race discrimination. The EEOC dismissed the charge and issued a right to sue letter on January 30, 2002. Plaintiff filed this suit on April 30, 2002. After discovery was completed and the final pre-trial order was filed with the Court, the defendant filed its motion for summary judgment.

Plaintiff filed an opposition to the summary judgment. In his opposition plaintiff argues that he was subject to an adverse employment action because the transfers would have significantly affected his professional growth and development, given him more benefits and responsibilities, and afforded him more experience and overtime. Plaintiff also contends there are pay discrepancies between positions he sought and his current position. Plaintiff also questions Fisher's motive in advising him not to request certain transfers as a method to keep him from getting the new jobs. Finally, plaintiff argues his time-barred claims remain valid under the continuing tort or continuing violation doctrine. Because there is no basis in law or fact to support any of plaintiff's arguments. Defendant's motion for summary judgment is granted for reasons to follow.

**A. Standard for Summary Judgment**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

**3.** There is a fact issue as to how Nick Veazy's name is spelled, though it is hardly material and does not affect the Court's decision on defendant's motion for summary judgment.

Defendant spells it "Veazy," and plaintiff spells it "Veazy." Because Veazy was employed by defendant, the Court adopted its spelling of his name in this opinion.

and that the moving party is entitled to a judgment as a matter of law."[4] The Supreme Court has interpreted Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[6] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[7] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[8] The substantive law dictates which facts are material and determines whether or not summary judgment should be granted.[9]

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[10] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[12] The Court now turns to a discussion of each of the plaintiff's claims.

## B. Race and Age Discrimination Claims

### 1. 1998 Transfer Request

 The claims related to McNealy's 1998 transfer requests are time-barred. Because Louisiana is a "deferral" state, plaintiff had 300 days from the date of the last act of discrimination to file a charge with the EEOC.[13] McNealy's first complaint with the EEOC was filed on September 7, 2001; thus, his Title VII and ADEA claims pertaining to the 1998 transfer requests are untimely. Claims asserted under 42 U.S.C. § 1981 are subject to Louisiana's one-year prescriptive period applicable to tort violations.[14] Consequently, McNealy's section 1981 claims

4. Fed R. Civ. P. 56(c); *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408–09 (5th Cir.2002); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996); and *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

5. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

6. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

7. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 (5th Cir.1994); and *Wallace, supra* at 1047.

8. *Wallace, supra* at 1048 (citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

9. *Canady v. Bossier*, 240 F.3d 437, 439 (5th Cir.2001).

10. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

11. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

12. *Anderson, supra* at 249–51, 106 S.Ct. at 2511.

13. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir.1998) *citing* 42 U.S.C. § 2000e–5(e)(1).

14. *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir.1985).

pertaining to the 1998 transfer requests are time barred.

 Plaintiff's reliance on the continuing tort or continuing violation doctrine to oppose defendant's argument concerning the 1998 transfer requests is without merit under the law and facts of this case.[15] The Fifth Circuit has identified three factors that must be considered by the Court when determining if the continuing violation doctrine is applicable: (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the acts; and (3) whether the act has the degree of permanence that should trigger an employee's awareness of and duty to assert his or her rights.[16] The continuing violation doctrine may not be used to revive claims which were concluded in the past even though the effects of the claims may still persist. It is important that Courts not confuse the continuing violation doctrine with a single violation followed by continuing consequences. Only continuous unlawful acts may form the basis of a continuing violation.[17]

 In *Frank v. Xerox Corp.*,[18] the Fifth Circuit held the continuing violation doctrine did not save the plaintiffs' claims of promotion and pay increase denials because such actions were "separate and varied acts and decisions that occurred at different times."[19] This case is clearly applicable to a resolution of the pending motion for summary judgment. The defendant's denial of the plaintiff's 1998 transfer requests were separate and varied acts by Fisher, distinguishable from any of the other employment decisions challenged in this case. Thus, the continuing violation doctrine cannot save any claims based on the 1998 transfer requests from being time barred by the applicable statutes of limitations.

**2. Remaining Transfer Requests**

 Plaintiff's claims based on the remaining transfer requests are not time-barred and must be considered on their merits. Plaintiff attempts to prove these race and age discrimination claims with indirect evidence. The Title VII, section 1981 and the ADEA claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[20] "Under this three-part scheme, a plaintiff must first present a prima facie case of discrimination. A plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class. If the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a 'legitimate,

---

15. *See McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850 (5th Cir.1993).

16. *Huckabay, supra* at 239.

17. *McGregor, supra* at 866–67.

18. 347 F.3d 130 (5th Cir.2003).

19. *Id.* at 136.

20. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The same *McDonnell Douglas* burden-shifting framework used in Title VII cases is also used in section 1981 cases. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186–88, 109 S.Ct. 2363, 2377–79, 105 L.Ed.2d 132 (1989); *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir.2001); and *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 501 (M.D.La. 2003). Additionally, the Fifth Circuit has interpreted the *McDonnell Douglas* framework to apply to disparate treatment claims brought under the ADEA. *See Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir.2003) and *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir.2002). Thus, all of plaintiff's discrimination claims under Title VII, section 1981, and the ADEA must be analyzed under *McDonnell Douglas*.

nondiscriminatory justification for its actions.' If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination."[21]

■ After reviewing the evidence, the Court finds that summary judgment should be granted on these remaining transfer requests because plaintiff failed to satisfy the adverse employment action element of his prima facie case. An adverse employment action is one that tends to result in a change in the employee's employment status, benefits or responsibilities.[22] The Fifth Circuit requires the adverse employment act to be an "ultimate employment decision."[23] Ultimate employment decisions involve acts such as "hiring, granting leave, discharging, promotion, and compensating."[24]

■ Plaintiff has failed to produce any evidence to create a material issue on whether he suffered an adverse employment action. A purely lateral transfer does not constitute an adverse employment action within the meaning of Title VII.[25] All of the remaining transfer requests plaintiff complains of were for positions that paid either the same amount of money plaintiff was making or substantially less than what plaintiff was making. In fact, the evidence reveals that plaintiff is a machinist in the repair division receiving the highest hourly rate in the shop. It can hardly be said that plaintiff sustained an adverse employment action where plaintiff was allowed to continue to make more money in his current position than he would have made if his request for a transfer was granted.

■ Plaintiff also argues that the advice Fisher gave which noted that plaintiff would make less money should the transfers be granted and that he would not receive overtime was only done because of his race or age. This argument is totally frivolous and does not rise to a level of an adverse employment action. It is clear that the defendant was only trying to assist plaintiff by ensuring that he remain the highest paid employee in the shop. Plaintiff has not submitted any evidence that he would have received any financial or other benefit by being transferred to a lower paying position. It must also be noted that plaintiff concedes he was denied the welder position in December 2000 because he was not as qualified as Nick Veazy, although he claims Fisher did not train him as a welder because of his race or age. This argument is without merit because the Fifth Circuit has held that denial of training in order to enable one to compete for job transfers is not an adverse employment action.[26] Thus, plaintiff is unable to meet the adverse employment ac-

**21.** *Manning v. Chevron Chemical Co., LLC,* 332 F.3d 874, 881 (5th Cir.2003) *citing McDonnell Douglas, supra* and *Price v. Fed. Express Corp.,* 283 F.3d 715 (5th Cir.2002).

**22.** *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 407 (5th Cir.1999).

**23.** *Burger v. Central Apartment Management, Inc.,* 168 F.3d 875, 878 (5th Cir.1999).

**24.** *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1999).

**25.** *Burger, supra* at 879 (Denial of transfer in which employee would have had same job title, benefits, duties, and responsibilities did not amount to an adverse employment action in Title VII retaliation claim.). *See also Veal v. AT&T Corp.,* 2000 WL 303299, *6 (E.D.La.2000)(Denial of request for lateral transfer was not an adverse employment action in Title VII race discrimination claim.).

**26.** *See Shackelford, supra* at 406–07 and *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir. 1995). This argument is also without merit because Fisher actually arranged for plaintiff to be cross-trained and certified as a welder in August 2002.

tion requirement of his prima facie case, and summary judgment on these remaining transfers is granted.

■ Even if this Court found that there was an issue of fact on the adverse employment action element, summary judgment would still be appropriate because plaintiff has failed to establish an issue of material fact as to whether defendant's nondiscriminatory reason was a pretext. Once a Title VII case reaches the pretext stage, the only remaining question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination.[27] Plaintiff claims he was overlooked for three Encore positions in December 2000—machinist, welder, and mechanic evaluator. However, he failed to offer any evidence that he was more qualified than the persons who eventually received the positions. In fact, the plaintiff actually removed his name from consideration for the mechanical job after being counseled by Fisher that the position actually paid less money than he was then making. It is also clear that the plaintiff did not get the welder position because the person chosen was a certified welder, and plaintiff was not. Finally, plaintiff admitted in his deposition that the person who did receive the mechanic evaluator job was the most qualified person for the job.[28] Plaintiff offers no additional evidence that the denial of any of these 2000 transfer requests were based on his race or age.

Plaintiff is unable to create a jury question regarding the 2001 transfer requests. Plaintiff applied for three Encore machinist positions in 2001—one of which paid the same rate he was making and the other two paid twenty-seven percent less than what he was making. The machinist position that paid the same salary plaintiff was receiving went to Lloyd Young. It is undisputed that Young's skills were equivalent to plaintiff's, and he had more seniority than plaintiff. Thus, there is no evidence that this decision was based on race or age. The lesser paying positions did go to younger white males, but the evidence submitted indicates plaintiff withdrew his name from consideration after being advised by Fisher the pay rate was less than he was making. The fact that plaintiff did not receive two positions that paid less than he was making fails to create a material issue of fact.

■ The Court has also considered plaintiff's other arguments which are clearly speculative, conflict with the stipulated facts or are unsupported by evidence and finds these arguments to be without merit and insufficient to cause the Court to deny defendant's motion for summary judgment. Evidence that is too speculative or reliant on isolated incidents will not allow a Title VII plaintiff to defeat a motion for summary judgment. Such bare allegations, without more, are too speculative to create a jury question.[29] Thus, summary judgment is granted in favor of the defendant on all of the remaining transfer requests.

## C. Hostile Work Environment Claims

■ Plaintiff also alleged that Fisher created a hostile work environment in violation of Title VII and the ADEA because of his race or age.[30] To establish a hostile

---

**27.** *Shackelford, supra* at 404.

**28.** Rec. Doc. No. 23, Exhibit "C" at 158–60.

**29.** *Shackelford, supra* at 405.

**30.** The United States Supreme Court and the Fifth Circuit have not directly decided wheth-

er the hostile work environment analysis may be extended to claims brought under the ADEA. *See Hernandez v. Department of Treasury,* 2003 WL 22715648, *6 n. 7 (E.D.La. 2003). Defendant contends plaintiff's hostile work environment claims are based on age, in addition to race, in its motion for summary

work environment claim based on race or age, plaintiff must prove (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race or age; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[31] The harassment is considered to affect a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." [32] "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." [33]

■ Plaintiff has failed to present any facts to support his hostile work environment claim. In fact, plaintiff did not even address defendant's motion for summary judgment arguments regarding these claims in his opposition. Defendant argues that plaintiff had abandoned his hostile work environment claims by failing to file an opposition. The Court does not need to address this contention because the hostile work environment claims may be disposed of on alternative grounds.

Plaintiff has not produced any evidence of sufficiently severe or pervasive conduct on Fisher's behalf to warrant sustaining his hostile work environment claims. To support a hostile work environment claim, plaintiff must "subjectively perceive the harassment as sufficiently severe or pervasive, and [his] subjective perception must be objectively reasonable." [34] The evidence fails to reveal that the defendant's acts were so severe or pervasive that it would have been objectively reasonable for plaintiff to believe he was in a hostile work environment claim. Thus, all of plaintiff's hostile work environment claims must be dismissed. Thus, defendant's motion for summary judgment on these claims is granted.

## D. Remaining State Law Claims

Plaintiff's remaining claims are state law discrimination claims of race discrimination under La. R.S. § 23:301; civil rights under La. R.S. § 23:301; hostile work environment under La. Civ.Code article 2315 and La. R.S. § 23:301; environmental whistleblower retaliation under La. R.S. § 30:2027; and emotional distress, intentional infliction of emotional distress, and loss of past and future wage and other employment benefits under La. Civ.Code article 2315 and La. R.S. § 23:301. The Court declines to exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). In the exercise of

---

judgment. A minority of lower courts in the Fifth Circuit have imported the hostile work environment requirements for sexual and race harassment to ADEA claims. *See e.g.* *Lacher v. West,* 147 F.Supp.2d 538 (N.D.Tex. 2001). The Court need not address this minor issue because, even if the hostile work environment analysis were to be applied to plaintiff's ADEA claim, plaintiff still fails to satisfy the requirements necessary to sustain such a claim.

**31.** *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002).

**32.** *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) *quoting Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**33.** *Ramsey, supra* at 268.

**34.** *Frank, supra* at 138.

its discretion, the Court dismisses these claims without prejudice.

### E. Conclusion

For reasons set forth above, defendant's motion for summary judgment on all federal claims is granted, and these federal claims are dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over the state law claims, and these claims are dismissed without prejudice.

Judgment shall be entered accordingly.